**Larry MAHANEY, et al.,**
**d/b/a Inside Track**

**and**

**Pardners' Western Bar & Grill, Inc.,**

**v.**

**MILLER'S, INC., et al.**

Supreme Judicial Court of Maine.

Argued Oct. 30, 1995.

Decided Dec. 28, 1995.

Harold C. Hamilton, II (orally), George W. Kurr, Logan, Kurr & Hamilton, Bangor, for Pardners'.

Stephen E.F. Langsdorf (orally), Preti, Flaherty, Beliveau & Pachios, Augusta, for Mahaney, et al.

Catherine R. Connors (orally), Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for Defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, and LIPEZ, JJ.

ROBERTS, Justice.

Miller's, Inc., appeals from a judgment entered in the Superior Court (Kennebec County, *Alexander, J.*) vacating the Maine Harness Racing Commission's grant of an off-track betting (OTB) facility license to Miller's, Inc. Larry Mahaney, Charles Day, and James Day, d/b/a Inside Track, and Pardners' Western Bar & Grill, Inc., cross-appeal, challenging the court's decision in part. We vacate the judgment and remand for the entry of a judgment affirming the decisions of the Commission.

## I.

In the fall of 1993, four entities filed with the Maine Harness Racing Commission applications for a license to operate an off-track betting facility in the Bangor–Brewer area pursuant to 8 M.R.S.A. §§ 275-A to 284 (Supp.1994). Top of the Stretch, Inc., d/b/a Legends, filed on October 26; Pete–Mar, Inc., filed on November 2; Pardners' filed on November 10; and Inside Track, initially filed on November 23 and filed an amended application on December 9. On December 9, the Commission held four separate public hearings on these applications. The Commission heard six hours of detailed testimony, received exhibits, and allowed testimony in opposition to the applicants. On December 14, the Commission deliberated on the

four applications and voted preliminarily, with three votes in favor of awarding an OTB license to Inside Track and two votes in favor of Pete–Mar. The Commission met again on January 6, 1994, to consider a final vote. Because Pete–Mar questioned the completeness and accuracy of the Inside Track application, the Commission then voted to reopen the hearing on that application.

On January 19, the Commission heard testimony from Legends, Pardners', Pete–Mar, Inside Track, and Davric Maine, Inc., an intervenor corporation representing Scarborough Downs Racetrack. The testimony established that Inside Track had incorrectly identified the fee owner of its facility in its application. The testimony also established that no later than January 1, Inside Track had a valid lease with the fee owner of the property on which it proposed to conduct off-track betting. Despite the inaccurate application, the Commission did not reject Inside Track's application. At the January 19 hearing, Pardners' requested compliance with the Commission's regulation (Chapter 15, Rule 3) requiring a decision to approve or deny any proposed OTB facility within 60 days of the filing of the application (60–day rule). Also at the January 19 hearing, Miller's, Inc., requested a delay in the final vote until all interested parties could apply, claiming that it did not have adequate notice that applications were being invited by the Commission for the Bangor area. The Commission took no action on Miller's request.

On February 2, Pardners' filed a motion to reopen its application to present evidence of a contract with Bangor Historic Track, Inc., operating the racetrack in Bangor. In the contract, Pardners' agreed to pay the racetrack 1% of the gross receipts from wagering (the handle) at its proposed OTB facility in exchange for professional consulting services to be provided by the racetrack.

On February 4, the Commission chair, Philip Tarr, notified the applicants that a meeting scheduled for February 7 was canceled. The stated reason for the cancellation was that "the Commission is postponing a decision because it understands that the Maine Legislature will take up the issue of clarifying statutory criteria for the Commis-

sion to use when considering multiple, competing off-track betting applications." The Commission scheduled its next meeting for February 23.

On February 7, the Commission received an application for an OTB facility license from Miami North. Miller's submitted its application on February 11. At the February 23 meeting, Miller's requested that a public hearing on its application be held prior to the Commission's consideration of the four pending applications. The Commission postponed making a decision until Miller's had received municipal approval from the City of Bangor. At that meeting, the Commission voted unanimously to reopen Pardners' hearing for the purpose of considering the contract with Bangor Raceway. In addition, Chairman Tarr read into the record a letter from Judy Paradis, Senate Chair of the Joint Standing Committee on Agriculture, asking for prompt action by the Commission on the issuance of the license in Bangor.

On March 1, the Commission heard testimony from Pardners' regarding its contract with Bangor Raceway, as well as testimony from Inside Track and Pete–Mar in opposition to Pardners' application. Additionally, Inside Track and Pete–Mar were given the opportunity to discuss their own applications' strengths. Also during this meeting, Chairman Tarr read into the record a February 28 letter from Robert Tardy, House Chair of the Joint Standing Committee on Agriculture, in which Tardy stated that the Committee voted to request that "the Commission defer final agency action on any of the now pending applications until all such applications are in order for final action." Chairman Tarr also read a March 1 letter from Senator Paradis stating that only seven of thirteen members were present for the Committee vote and urging a prompt decision. The Commission concluded the meeting by voting to hold a public hearing on Miller's and Miami North's applications on March 24 and to deliberate on all six applications after that hearing.

At the March 24 hearing Miami North did not participate, but Miller's presented extensive testimony in favor of its application, including a proposal (1% proposal) in which

Miller's pledged to give Bangor Raceway a graduated percentage of Miller's gross handle: 1% of the gross handle up to and including $7.5 million; 1.25% of all gross handle between $7.5 and $10 million; 1.5% of all gross handle above $10 million. Pardners' and Inside Track presented testimony in opposition to Miller's application. After the close of Miller's public hearing, each OTB facility applicant, as well as the intervenor Davric, was given five minutes to present to the Commission a summary of the strengths of their applications.

On March 25, the Commission once again met for the purpose of deliberating on the applications. Chairman Tarr read into the record the statutory criteria on which the applicants could be judged. The Commission voted 3–to–2 in favor of awarding a license to Miller's, and directed the commission staff to "write a vote of decision" to be reviewed by the Commission at its next meeting on April 13.

On April 13, the Commission heard a motion by Inside Track to reopen or reconsider the preliminary vote awarding a license to Miller's. The Commission took no action on the motion. At the conclusion of the meeting, the Commission voted unanimously to award the Bangor OTB license to Miller's and to deny the applications of Inside Track, Pardners', Legends, and Pete–Mar. In making its decision, the Commission weighed all of the evidence submitted in the applications and presented during the public hearings. It found that the purpose of the OTB licensing statute, to promote live racing, would be best served by the issuance of only one license. The Commission found Miller's application superior in the following areas: facilities, location, security services, financial ability, existing client base, and pledge to promote live racing. Miller's license was granted on the understanding by the Commission that Miller's would enter into a contract with Bangor Raceway, as approved by the Commission's Chair, memorializing Miller's pledge to provide supplemental funds to Bangor Raceway as set forth in Miller's application.

Pardners' and Inside Track challenged the Commission's decision in separate complaints filed in the Superior Court pursuant to 5 M.R.S.A. § 11002 (1989 & Supp.1994). Following a hearing in January 1995 on the consolidated complaints, the court affirmed the Commission's decision to license only one OTB facility in the Bangor area. The court vacated the Commission's decision to deny a license to Inside Track and to Pardners' and the decision to award a license to Miller's on the grounds of (1) improper legislative contact, (2) exceeding statutory authority, and (3) unfairness caused by the timing of Miller's participation. The court stayed until June 1995 the vacation of Miller's license, and remanded the proceedings to the Commission for a new OTB facility license approval process open to any applicant. These appeals followed.

## II.

Inside Track contends that the court's order remanding this matter to the Commission is not a final judgment. Miller's and Pardners' argue that this case is ripe for review. Strangely, the Commission presents no argument and does not participate in these appeals. That fact weakens Miller's argument that we should entertain the appeals even from an interlocutory ruling to safeguard separation of powers and to avoid disrupting the administrative process. In addition, Inside Track argues that the court had in effect retained jurisdiction of the matter.

■ The court did not effectively retain jurisdiction pursuant to our suggestion in *Sanborn v. Town of Eliot,* 425 A.2d 629 (Me.1981). We conclude nevertheless that the court's order is not a final judgment according to our prior cases, commencing with *Harris Baking Co. v. Maine Employment Sec. Comm'n,* 457 A.2d 427 (Me.1983). Rather than overrule *Harris Baking* and its progeny, we apply a judicial (and administrative) economy principle. Because the Commission's actions were proper in all respects, a dismissal of the appeals at this juncture would unnecessarily exacerbate the workload of both the agency and the courts.

### III.

■ Pardners' alone challenged the Commission's decision to limit its approval to a single OTB for the Bangor area. The thrust of Pardners' argument is based on the failure of the Legislature to enact legislation to clarify its intent. We have frequently stated, however, that legislative inaction is indicative of nothing. We give deference to the interpretation of the Commission because it is charged with application of the statute. In its decision, the Commission found, despite the statute's silence, that the right given to existing OTB facilities to veto later OTB license applications in their market area indicates that multiple licenses would adversely affect the public interest. We do not find that conclusion to be inconsistent with the statutory scheme. Pardners' reliance on *Spain v. City of Brewer*, 474 A.2d 496 (Me. 1984), is misplaced. Unlike *Spain* where the city council's permit denial was based on impermissible grounds, here the Commission did not stray from the OTB statutory criteria in making its decision.

■ Inside Track contends that the Commission's approval based on Miller's 1% proposal violates the statute because it is not among the criteria listed by the Legislature. Pardners', which had submitted a similar proposal, argues that the Commission lacked authority to issue a license conditioned on Miller's entering into a contract with Bangor Raceway. Contrary to these assertions, consideration of the 1% proposal is consistent with the statutory scheme, the purpose of which is to provide additional funding for live racing. Although concern about a "bidding war" among applicants may be legitimate, the Commission has the ultimate responsibility to prevent abuse. In this instance, the Commission's consideration of such proposals falls within the statutory criterion that the grant of an application "will not adversely affect the integrity of live racing."

■ Both Pardners' and Inside Track argue that the Commission violated its own rule by failing to make a decision on the merits within 60 days of the filing of the applications. They acknowledge that the rule does not provide any consequence of the Commission's failure to meet the 60-day deadline. They argue, however, that the delay resulted in such fundamental unfairness as to amount to a denial of due process. We perceive no such inequity. Although Pardners' requested compliance with the 60-day deadline at the meeting on January 19, the record discloses that both Pardners' and Inside Track supplemented their original proposals after the 60-day deadline.

Both Pardners' and Inside Track describe circumstances in the commission proceeding that they allege demonstrate substantial prejudice, citing *In re Maine Clean Fuels, Inc.*, 310 A.2d 736 (Me.1973). For example, they argue that Miller's had the benefit of reviewing prior applications, reviewing the prior hearing, and accommodating to the commissioners' expressed concerns in earlier proceedings. The record reveals, however, that all applications were kept on parallel tracks and that each applicant had ample opportunity to explore the weaknesses of every other applicant. Ultimately the Commission based its decision on factual material never seriously contested in the Superior Court or on this appeal.

■ Somewhat more problematic are the issues generated by legislative contacts with the Commission, specifically directed at the proceedings at issue here. We recognize that such legislative interference could, in an appropriate circumstance, require judicial vacation of administrative action. Our careful review of the legislative correspondence and the Commission's response convinces us that no prejudice resulted to any party.

The entry is:

Judgment vacated.

Remanded for entry of a judgment affirming the decisions of the Maine Harness Racing Commission.

All concurring.