2001 ME 19

**Darlene LIBERTY**

v.

**Scott LIBERTY.**

Supreme Judicial Court of Maine.

Submitted on Briefs Dec. 20, 2000.

Decided Jan. 30, 2001.

Jeffrey Bennett, The Bennett Law Firm, P.A., Portland, for plaintiff.

Defendant did not file a brief.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] Darlene Liberty appeals from an order of the Superior Court (Cumberland County, *Warren, J.*) modifying the amount subject to attachment and trustee process ordered pursuant to M.R. Civ. P. 4A(c) and 4B(c) [1] and releasing $15,000 so that Scott Liberty, Darlene's husband, could pay a retainer to his criminal defense attorney. Darlene contends that the court lacked authority to release the $15,000 from attachment and trustee process in the manner it did. Because the court did not follow the procedures specified in M.R. Civ. P. 4A(d)(1) and 4B(d)(1) to authorize release of funds from the attachment, we vacate that portion of the court's order releasing $15,000 from the attachment and trustee process.

## I. CASE HISTORY

[¶ 2] On March 23, 2000, Darlene Liberty filed a verified complaint against her husband, Scott Liberty, including allegations of sexual assault, battery and emotional distress. Darlene also filed a motion for an *ex parte* attachment and trustee process in the amount of $500,000, alleging that it was more likely than not that she would obtain a judgment equal to or greater than this amount.

[¶ 3] The next day, Darlene filed a complaint for divorce. A preliminary injunction against Scott, enjoining him from transferring assets, was automatically entered when the divorce action was filed. *See* 19–A M.R.S.A. § 903 (1998). On the same day, the Superior Court entered an *ex parte* order approving attachment and trustee process in the amount of $500,000.

[¶ 4] When these actions were filed, Scott was apparently in jail on criminal charges based on some of the same facts as alleged in the civil complaint.

[¶ 5] Subsequently, Darlene alleged that Scott had violated the preliminary injunction by wiring funds out of state. On April

1. The relevant sections of M.R. Civ. P. 4A(c) and 4B(c) are as follows:

### RULE 4A. ATTACHMENT

. . . .

**(c) [Writ of Attachment]: Service.**

. . . .

No property may be attached unless such attachment for a specified amount is approved by order of the court. Except as provided in subdivision (g) of this rule [ex parte hearings on attachments], the order of approval may be entered only after notice to the defendant and hearing and upon a finding by the court that it is *more likely than not that the plaintiff will recover judgment,* including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment.
(Emphasis added).

. . . .

### RULE 4B. TRUSTEE PROCESS

. . . .

**(c) [Summons to Trustee]: Service.**

. . . .

No trustee summons may be served unless attachment on trustee process for a specified amount has been approved by order of the court. Except as provided in subdivision (i) of this rule, the order of approval may be entered only after notice to the defendant and hearing and upon a finding by the court that it is *more likely than not that the plaintiff will recover judgment,* including interest and costs, in an aggregate sum equal to or greater than the amount of the trustee process and any insurance, bond, or other security, and any property or credits attached by writ of attachment or any other trustee process shown by the defendant to be available to satisfy the judgment.
(Emphasis added).

27, 2000, after a hearing, the court filed an order broadening and applying the preliminary injunction in the divorce action to the tort action.

[¶ 6] Scott then filed a motion to dissolve or modify the *ex parte* order of attachment in the tort action, and to modify the preliminary injunction in the divorce action. Filed with the motion was an affidavit from an attorney stating that he was requesting a retainer of $15,000 to defend Scott against pending criminal charges.

[¶ 7] After a hearing, the court determined that $150,000 was "the minimum amount" that the court anticipated would be awarded for Darlene's damages.[2] Because all of the property that could be attached was marital property in which Darlene asserts a presumptive one-half interest, the court reduced the amount subject to attachment and trustee process from $500,000 to $300,000 to provide for potential recovery of $150,000 from Scott's interest in the marital property.

[¶ 8] The court's order also observed that "[t]o the extent that the assets in question here exceed $300,000—which cannot be determined on the present state of the record—defendant may seek an order limiting attachment and trustee process to specified property. *See* M.R. Civ. P. 4A(d)(1), 4B(d)(1)."

[¶ 9] Despite acknowledging the necessary but unutilized process for Scott to undertake to exempt property from attachment, the court authorized expenditure from marital assets of $15,000 for Scott's criminal defense—releasing these funds from its attachment. Darlene then brought this appeal. Scott has not participated in the appeal.[3]

[¶ 10] Orders for attachment or trustee process are immediately appealable as exceptions to the final judgment rule. *See Plourde v. Plourde*, 678 A.2d 1032, 1035 (Me.1996) (citing *Boisvert v. Boisvert*, 672 A.2d 96, 97 n. 2 (Me.1996)). The divorce and tort cases have been consolidated on appeal.

## II. DISCUSSION

[¶ 11] We review an order for attachment or trustee process for an abuse of discretion or clear error. *Id.* (citing *Boisvert*, 672 A.2d at 97). In this case, the court addressed both attachment and trustee process without distinguishing between them, finding that "since trustee process is available for intentional infliction of emotional distress and plaintiff's claims for intentional infliction are based on the same facts, no distinction will be drawn between attachment and trustee process in terms of the amount authorized."

[¶ 12] Darlene contends that because the court found that she was entitled to attachment and trustee process in the amount of $300,000, the court had no discretion to further reduce the amount by $15,000 to permit Scott to retain a criminal defense attorney.[4]

2. The violent and degrading conduct alleged by Darlene supports the trial court's determination regarding potential damages.

3. Darlene notes in her brief, "for information of this Court," that on July 6, 2000, Scott entered pleas of guilty on two counts of assault, one count of terrorizing, one count of harassment by telephone and one count of criminal trespass. According to the brief, all five counts were misdemeanors, and Scott was sentenced to four terms of 364 days and one term of 180 days, all suspended except for time served, and five consecutive one-year terms of probation.

4. As an initial matter, both the court's order and Darlene's brief erroneously apply the former "reasonable likelihood" standard (from the pre-1992 rule) for granting attachment and trustee process. *See* M.R. Civ. P. 4A advisory committee's note to 1992 amend.,

[¶ 13] The specific showings Scott must make in order to be granted a release of funds from the attachment are described in M.R. Civ. P. 4A(d)(1) (and in its counterpart for trustee process, Rule 4B(d)(1)).[5] Rule 4A(d)(1) states:

> In the order approving an attachment, the court shall specify that the attachment is to issue solely against particular property or credits upon a *showing by the defendant* (A) that the property or credits specified are available for attachment and would, if sold to satisfy any judgment obtained in the action, yield to the plaintiff an amount at least equal to the amount for which attachment is ap-

proved in accordance with the criteria of subdivision (c), and (B) that the absence of such a limitation will result in hardship to the defendant.[6] (Emphasis added).

[¶ 14] To obtain the release of the $15,000, Scott had to demonstrate that specific joint marital property with a value of $300,000 could be attached, while still leaving $15,000 as exempt from attachment.[7] In addition, Scott had to show that he would undergo hardship if the $15,000 were not released.

[¶ 15] Scott did not meet his burden of proof, as specified by Rule 4A(d)(1) and 4B(d)(1). In a supplemental memorandum

---

Me. Rptr., 602–617 A.2d XCI–XCIV, available at http://www.cleaves.org/pdf/cvrls.pdf.

The current version of Rules 4A and 4B state that an attachment and trustee process may be ordered only if the court finds that it is *"more likely than not* that the plaintiff will recover judgment in an amount equal or greater than the aggregate sum of the attachment" (emphasis added). The Advisory Committee notes state that "[a] moving party must show a greater than 50% chance of prevailing .... The required showing is to be made through affidavits; there is no right to an evidentiary hearing." *Id.* at XCII. *See also Boisvert*, 672 A.2d at 98 n. 3 (citation omitted); *Trans Coastal Corp. v. Curtis*, 622 A.2d 1186, 1188 (Me.1993); *Wilson v. DelPapa*, 634 A.2d 1252, 1255 (Me.1993). However, the Superior Court stated in its order that on a motion for attachment and trustee process, "[t]he Law Court has emphasized that ... the moving party must not only show a likelihood of success on the merits but also that she is *reasonably likely* to recover an amount at least equal to the amount of the requested attachment" (emphasis added) (citing *Bowman v. Dussault*, 425 A.2d 1325, 1329–30 (Me.1981); *Jacques v. Brown*, 609 A.2d 290, 292–93 (Me. 1992)). Application of the erroneous standard makes no difference to the validity of the $300,000 determination because of the court's separate finding that $150,000 was "the minimum amount" of Darlene's prospective recovery.

5. Rule 4A(d)(2) (and its counterpart for trustee process, Rule 4B(d)(2)), provides for alter-

native security for a single defendant who can tender cash or a bond with sufficient sureties equal to the amount of the attachment with the result that any prior attachment against the defendant can then be dissolved. The (d)(2) alternative is not at issue here.

6. The Advisory Committee's notes to the 1992 amendments of M.R. Civ. P. 4A and 4B described the process by which modifications to attachments and trustee process are permitted:

> Rule 4A(d)(1) explicitly requires the motion justice to limit the attachment to certain specific property or credits upon a showing by the defendant that the property or credits offered by that defendant are adequate and available to satisfy the judgment and that, otherwise, hardship to defendant will result.

M.R. Civ. P. 4A advisory committee notes to 1992 amendment, 602–617 A.2d at XCII, available at http://www.cleaves.org/pdf/cvrls.pdf.

7. This is the point at which the court may exercise some limited discretion. *See* M.R. Civ. P. 4A advisory committee's note to 1992 amend., 602–617 A.2d at XCII, available at http://www.cleaves.org/pdf/cvrls.pdf (stating the Superior Court has "some limited discretion to select particular property or credits to be attached but is not required to exercise that discretion"). *See also Sweeney v. Hope House, Inc.,* 656 A.2d 1215, 1216–17 (Me. 1995).

on May 5, 2000, Scott claimed that at least $26,000 was available from the marital estate that was not subject to *ex parte* attachment or trustee process. Darlene, however, refuted this in her response by stating that those funds were already spent for legal fees, living expenses, and taxes.

[¶ 16] The court made no finding that adequate funds or property values were available to provide for the amount of the attachment, while exempting $15,000 for Scott to use. The court noted that "[i]t is not disputed that all of the assets in question here are marital property," and that "all relevant assets currently appear to be tied up by attachment, trustee process, or the divorce injunction." In its order, the court stated that it has the authority to modify an attachment "if, for instance, a defendant would otherwise be deprived of such necessities as food and shelter. Any contrary reading of the applicable rules and statutes would raise serious constitutional issues."[8]

[¶ 17] The court appears to have reasoned that Scott's Sixth Amendment right to counsel could be compromised by inadequate representation if he was not allowed to pay the retainer. Scott claimed in his supplemental memorandum on the issue of criminal defense fees that the right to attachment and trustee process held by Darlene is outweighed by his constitutional right to counsel. Scott's Sixth Amendment argument is, on this record, premature. Until he identifies "property or credits ... adequate and available" to satisfy the $300,000 attachment, Scott's hardship argument that his constitutional rights are being jeopardized does not authorize a release of funds pursuant to M.R. Civ. P. 4A(d)(1) and 4B(d)(1). Also, on this record, we are not presented with a defendant seeking counsel who has attempted but failed to identify sufficient property and credits which, if sold, would satisfy the attachment amount.

[¶ 18] The court order makes no finding, explicit or implicit, that the $15,000 is funds in excess of properties or goods sufficient to cover the $300,000 attachment and trustee process. Accordingly, the $15,000 exemption from the amount subject to attachment and trustee process was not authorized as required by M.R. Civ. P. 4A(d)(1) and 4B(d)(1).

The entry is:

That portion of the court's order authorizing payment of $15,000 for criminal defense is vacated. The remainder of the court's order is affirmed.

---

8. The Superior Court contrasted the present case with *Maine Nat'l Bank v. Anderschat*, 462 A.2d 482 (Me.1983), and *Sweeney*, stating that here, a comparatively limited amount of funds is released, while in those cases, the denial or dissolution of the attachments in their entirety was at issue. *See Anderschat*, 462 A.2d at 484; *Sweeney*, 656 A.2d at 1217. However, *Anderschat* and *Sweeney* are not directly applicable in this context, where the question is not establishing the appropriate amount subject to attachment, but determining whether funds can be released from that amount in accordance with procedures explicitly set forth in Rules 4A and 4B.