2011 ME 105

**Lynda J.R. BOND**

v.

**Christopher A. BOND.**

Supreme Judicial Court of Maine.

Argued: May 10, 2011.
Decided: Nov. 1, 2011.

---

Ronald P. Lebel, Esq. (orally), and Adam R. Lee, Esq., Skelton, Taintor & Abbott, Auburn, for appellant Christopher A. Bond.

Elizabeth J. Scheffee, Esq., (orally), and Margaret C. Lavoie, Esq., Givertz, Scheffee & Lavoie, Portland, for appellee Lynda J.R. Bond.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

Majority: SAUFLEY, C.J., and LEVY, SILVER, MEAD, and GORMAN, JJ.

Dissent: ALEXANDER, and JABAR, JJ.

1. M.R. Civ. P. 119 provides: "The court may appoint a referee in any case where the parties agree that the case may be heard by a referee, pursuant to Rule 53."

    Title 19-A M.R.S. § 252 (2010) provides:

    **1. Appointment of Referee.** The court may appoint a referee in any proceeding for paternity, divorce, judicial separation or modification of existing judgments brought under this Title:

      A. When the parties agree the case may be tried before a referee; or

MEAD, J.

[¶ 1] Christopher A. Bond appeals from an order entered by the District Court (Portland, *Dobson, J.*) granting Lynda J.R. Bond's motion to have two post-judgment motions for relief heard by the same referee whose report formed the basis of the parties' divorce judgment. Christopher contends that (1) the court's order is immediately appealable; (2) although he had agreed to have a referee hear the divorce case, the court erred in appointing a referee to hear the post-judgment motions over his objection pursuant to M.R. Civ. P. 119; and (3) the court lacked authority pursuant to 19-A M.R.S. § 252(1) (2010) to appoint a referee to hear the particular motions at issue. Because we conclude that no exception to the final judgment rule applies in this case, we dismiss the interlocutory appeal and do not reach its merits.

## I. BACKGROUND

[¶ 2] Lynda and Christopher Bond were married in October 1981; Lynda filed a complaint for divorce in January 2008. By joint motion, the parties asked the District Court to appoint a referee to hear the divorce case pursuant to M.R. Civ. P. 119 and 19-A M.R.S. § 252 (2010).[1] The court granted the motion and appointed Attorney Karen F. Wolf as referee.

[¶ 3] The case was presented to the referee in February 2010. During the

      B. Upon motion demonstrating exceptional circumstances that require a referee.

    **2. Payment for Service.** Payment for the services of the referee is the responsibility of the parties, as ordered by the court. If the court finds that either or both of the parties are indigent, the court may pay the reasonable costs and expenses of the referee.

    **3. Referee's Report.** If all parties waive their right to object to acceptance of the referee's report, the court shall immediately enter judgment on the referee's report without a further hearing.

four-day hearing, the referee heard testimony from the parties and seven expert appraisers, in addition to receiving in evidence a large number of exhibits and two stipulations. On August 17, 2010, the referee filed her thirty-two-page amended report. Both parties waived objection, and on August 31 the court (*Goranites, J.*) accepted the report, entering a divorce judgment incorporating the report two days later.

[¶ 4] Twenty-two days after the divorce judgment was entered, Lynda filed two motions for post-judgment relief, one pursuant to M.R. Civ. P. 60(b)[2] and the other pursuant to the omitted property statute,[3] based on her allegation that Christopher had reneged on his agreement at the hearing to file their 2009 tax returns jointly. Lynda moved to have the motions heard before the same referee that conducted the earlier hearing. Christopher opposed this request, asserting *inter alia* that pursuant to M.R. Civ. P. 119 the court could not do so without his renewed consent. After hearing argument, the court referred the motions to the referee over Christopher's objection, finding that "it is in the interest of judicial economy for the Referee to hear the post-judgment motions because of the complex issues and the Referee's familiarity with the case." This appeal followed.

## II. DISCUSSION

[¶ 5] Before reaching the merits of the parties' arguments, we must first decide whether this interlocutory appeal

should be dismissed pursuant to the final judgment rule. Absent an exception, "the final judgment rule prevents a party from appealing a trial court's decision on a motion before a final judgment has been rendered." *Fiber Materials, Inc. v. Subilia*, 2009 ME 71, ¶ 12, 974 A.2d 918. Although both parties urge us to reach the merits here, we will "consider sua sponte whether a matter is properly before us on appeal from a final judgment." *Bank of N.Y. v. Richardson*, 2011 ME 38, ¶ 7, 15 A.3d 756. "A judgment is final only if it disposes of all the pending claims in the action, leaving no questions for the future consideration of the court." *Id.* (quotation marks omitted).

[¶ 6] Here, although the terms of the divorce judgment became final when the judgment was signed, *see Estate of Banks v. Banks*, 2009 ME 34, ¶ 9, 968 A.2d 525; M.R. Civ. P. 115(b), Christopher's appeal is not from the judgment's terms, but rather the court's procedural order referring Lynda's post-judgment motions back to the referee whose report formed the basis of the judgment. The resolution of those motions remains a "question[ ] for the future consideration of the court" in the divorce action. *Bank of N.Y.*, 2011 ME 38, ¶ 7, 15 A.3d 756 (quotation marks omitted). Accordingly, we must determine whether any exception to the final judgment rule applies to this interlocutory appeal taken from the court's second order of reference, or whether an appeal must await a new or amended final judgment following resolution of the post-judgment motions.[4]

2. Maine Rule of Civil Procedure 60(b) allows a court to grant relief from a final judgment for six reasons, two of which Lynda asserted in her motion: "(1) mistake, inadvertence, surprise, or excusable neglect" and "(6) any other reason justifying relief from the operation of the judgment."

3. Title 19–A M.R.S. § 953(9) (2010) provides: If a final divorce decree fails to set apart or divide marital property over which the

court had jurisdiction, the omitted property is deemed held by both parties as tenants in common. On the motion of either party, the court may set aside or divide the omitted property between the parties, as justice may require.

4. The question of whether the appeal must await the entry of a new or amended final judgment pursuant to the final judgment rule is different from the central question present-

[¶ 7] There are several exceptions to the final judgment rule, three of which we discuss here: the death knell, collateral order, and judicial economy exceptions. *See* Alexander, *Maine Appellate Practice* § 304(a)-(c) at 202–04 (3d ed.2008); *Fiber Materials, Inc.*, 2009 ME 71, ¶¶ 14, 25, 26, 974 A.2d 918.

## A. Death Knell Exception

■ [¶ 8] In *Fiber Materials, Inc.*, we said:

> The death knell exception applies if substantial rights of a party will be irreparably lost if review is delayed until final judgment. A right is irreparably lost if the appellant would not have an effective remedy if the interlocutory determination were to be vacated after a final disposition of the entire litigation. Put differently, where an interlocutory order has the practical effect of permanently foreclosing relief on a claim, that order is appealable. Cost or delay alone is insufficient to establish the irreparable loss of a right.

2009 ME 71, ¶ 14, 974 A.2d 918 (citations omitted) (quotation marks omitted).

[¶ 9] Christopher asserts that absent an immediate appeal he will irreparably lose "[t]he right to have the District Court, and not a referee, determine the facts de novo," and that this right, "once taken away cannot be regained." His assertion does not withstand scrutiny.

[¶ 10] If this appeal is dismissed, the post-judgment motions will proceed to the referee for hearing and decision. Whatever that decision is, it is subject to the parties' objections and review by the District Court, which may adopt, modify, or reject the decision, with or without receiving further evidence.[5] M.R. Civ. P. 53(e)(2). Assuming that the parties do not settle their dispute in the interim, a final judgment of the trial court, encompassing both the procedural issue presented here and the merits of the post-judgment motions, would then be before this Court on appeal. If Christopher prevailed on his argument that the second order of reference required his renewed consent, we could then vacate the judgment and remand for a de novo hearing on the post-judgment motions before a judge. Because we are able to correct on appeal from a final judgment any procedural error the court might have made in initially referring Lynda's motions to the referee, Christopher suffers no irreparable harm by the court's action.

## B. Collateral Order Exception

■ [¶ 11] The collateral order exception is closely related to the death knell exception. *See* Alexander, *Maine Appellate Practice* § 304(b) at 203. It applies "when the appellant can establish that (1) the decision is a final determination of a claim separable from the gravamen of the litigation; (2) it presents a major unsettled

---

ed by the merits of Christopher's appeal, which is whether the second order of reference is part of the original divorce "case" within the meaning of M.R. Civ. P. 119, or constitutes a new "case" requiring his renewed consent before it may be referred to a referee. Our answer to the first question does not answer the second, and we do not address the question presented by the merits.

5. The court's active role in conducting a hearing and then deciding Lynda's motion for a

second order of reference demonstrates that it is not refusing to exercise its jurisdiction over this case, a circumstance that could provide a basis for us to hear the interlocutory appeal. Christopher does not contend that the court is declining to exercise its jurisdiction; he contends that the court is exercising its jurisdiction wrongly. Nothing in the record indicates that the court is not fulfilling its role pursuant to M.R. Civ. P. 53(e)(2) in the same way that it did following its first order of reference.

question of law; and (3) it would result in irreparable loss of the rights claimed, absent immediate review." *Fiber Materials, Inc.*, 2009 ME 71, ¶ 25, 974 A.2d 918 (quotation marks omitted). For the reasons discussed above, there is no irreparable loss of a right at stake here, and so this exception does not apply.

## C. Judicial Economy Exception

■■ [¶ 12] The judicial economy exception "is available in those rare cases in which appellate review of a non-final order can establish a final, or practically final, disposition of the entire litigation. It applies only when a decision on the appeal ... regardless of what it is, would effectively dispose of the entire case." *Id.* ¶ 26 (quotation marks omitted).

[¶ 13] Given the history of this divorce litigation, it is possible, and perhaps likely, that the party that does not prevail on the post-judgment motions will appeal from the District Court's final judgment on the motions, regardless of whether the initial fact-finder is the referee or the court. Neither party has represented that a decision on the discrete procedural issue presented to us now will finally resolve the disputed substantive economic issue. Therefore, a decision on this interlocutory appeal, "regardless of what it is," will not "effectively dispose of the entire case." *Id.* For that reason, the judicial economy exception is not applicable.

## D. Conclusion

[¶ 14] Although the parties have succinctly presented an intriguing procedural question to the Court, we cannot reach it at this juncture without doing violence to our well-established jurisprudence. Regardless of how discrete and intriguing an issue may be, unless it falls within an established exception to the final judgment rule, our scrutiny must await a final judgment where it, and all other preserved issues, may be addressed together. For that reason, we must dismiss the appeal as interlocutory.

The entry is:

Appeal dismissed.

ALEXANDER, J., with whom JABAR, J., joins, dissenting.

[¶ 15] Because I would reach the merits of this appeal and vacate the order of reference, I respectfully dissent.

[¶ 16] One day after the appeal period expired and the divorce judgment and its division of $3,274,835.80 in marital property had become final, Lynda Bond filed her two post-judgment motions. The motions asserted that Christopher Bond's failure to file the 2009 tax returns jointly constituted "omitted property" that might cost Lynda Bond approximately $20,000 in additional tax liability.

[¶ 17] The motions presented three narrow questions that the court could have, and should have, resolved in one brief hearing. Those questions were (1) by waiving objection to the referee's report and consenting to entry of judgment in accordance with the referee's report, did Lynda Bond fail to preserve objection to the report not addressing the 2009 tax return; (2) could a failure to fulfill a commitment, which was known when consenting to entry of judgment, become "omitted property"; and (3) was there an agreement to file the 2009 tax returns jointly, and, if so, had Christopher Bond breached that agreement? The first two questions presented legal issues involving court processes that only the court, not the referee, could resolve.

[¶ 18] Instead of hearing and resolving the motions, the court conducted a hearing on Lynda Bond's motion to have the post-judgment motions referred to a referee for consideration and decision. After the hearing, the court granted the motion and

referred the matter to a referee. In referring the matter to the referee, the court stated that "it is in the interest of judicial economy for the Referee to hear the post-divorce motions because of the complex issues and the Referee's familiarity with the case." Despite the requirements of 19–A M.R.S. § 252(1)(B) (2010) and M.R. Civ. P. 53(b)(2),[6] the court made no finding that there were exceptional circumstances or some exceptional condition requiring reference of the matter.

### A. Relevant Case History

[¶ 19] The case had been heard by the referee over four days in February 2010. During that hearing, Christopher Bond was asked if he would be filing a joint income tax return with Lynda Bond for the 2009 tax year. Christopher Bond answered: "[M]y understanding is we're going to file jointly." The referee then confirmed: "So, I think it sounds to me like everyone is in agreement that you will file jointly for 2009." There was no negative response to this observation.

[¶ 20] No income tax return, joint or individual, was apparently filed on or after the April 2010 filing deadline for 2009 income tax returns and before the referee filed her report in August 2010. The record does not indicate that either party brought the failure to file the 2009 tax return, as anticipated at hearing, to the referee's or the court's attention. The referee's report did not address the 2009 income tax return.

[¶ 21] After the referee's report was filed, there was no timely motion to amend findings pursuant to M.R. Civ. P. 53(e)(5). Instead, each party waived any objection to the referee's report and sought entry of

judgment in accordance with the report. On September 2, 2010, the court (*Goranites, J.*) accepted the report and entered a divorce judgment, incorporating the report, as the parties had requested.

[¶ 22] On September 23, 2010, the time for filing any appeal of the divorce judgment expired, *see* M.R.App. P. 2(b)(3), the judgment's directives regarding property division and spousal support became final, and any opportunity, pursuant to M.R. Civ. P. 53(e)(2), to recommit the report to the referee for clarification ended. One day later, on September 24, 2010, Lynda Bond filed the two motions for post-judgment relief. She also filed a motion to have her motions heard before the referee who had decided the divorce. Christopher Bond opposed the motion, asserting that, pursuant to M.R. Civ. P. 119, the court could not order a reference without his consent.

[¶ 23] After hearing argument, the court referred the motions to the referee. The court's order included no findings indicating exceptional circumstances requiring hearing by a referee. This appeal followed.

### B. Interlocutory Appeal

[¶ 24] Rule 53(b)(2) of the Maine Rules of Civil Procedure notes that "[i]n absence of agreement of the parties, a reference shall be the exception and not the rule." Addressing situations when a reference is ordered over objection, recent commentary on Rule 53 recommends an interlocutory appeal as an exception to the final judgment rule. Thus, 3 Harvey, *Maine Civil Practice* § 53:1 at 167 (3d ed.2011), suggests that when a reference is ordered over objection, "immediate review of an

---

6. M.R. Civ. P. 53(b)(2) states that a reference over one party's objection "shall be made only upon a showing that some exceptional condition requires it." The law governing reference of divorce cases specifies that a reference over one party's objection may occur only "[u]pon motion demonstrating exceptional circumstances that require a referee." 19–A M.R.S. § 252(1)(B) (2010).

order of reference should be sought through a report of the interlocutory ruling pursuant to [M.R.] App. P. 24(c) or immediate appeal under the collateral order doctrine."

[¶ 25] Pursuant to the collateral order exception to the final judgment rule cited in *Maine Civil Practice,* we will review the merits of an interlocutory order that (1) involves a final determination of a claim separable from and collateral to the underlying lawsuit, or presents a major and unsettled question of law, and (2) results in an irreparable loss in the absence of immediate review. *See Liberty v. Liberty,* 2001 ME 19, ¶ 10, 769 A.2d 845;[7] *Dairyland Ins. Co. v. Christensen,* 1999 ME 160, ¶ 9, 740 A.2d 43; *Pierce v. Grove Mfg. Co.,* 576 A.2d 196, 200 (Me.1990).

[¶ 26] Here, the issue related to the filing of the 2009 income tax return was collateral to and separable from the issues litigated in the divorce and addressed in the final judgment entered by agreement. At the time the matter was heard by the referee, the tax return filing question related only to future anticipated events, on or after the April 2010 filing deadline. The referee received no further information related to the anticipated tax return filing before rendering her report. Lynda Bond's tactical decision to wait to raise the issue until after the divorce had become final confirms that she viewed the issue as collateral to and separable from the issues before the referee and the court in the divorce judgment. Thus, the first element for review pursuant to the collateral order exception to the final judgment rule is met.

[¶ 27] The questions that the referee is to resolve are very narrow, as discussed above. Two of the questions relate to court processes that occurred after the referee issued her report and can only be resolved by the court. The third question is as much a question of law as of fact: at hearing, the referee confirmed that the parties anticipated filing a joint 2009 income tax return at the time in the future when they would be obligated to file that return.

[¶ 28] Any report by the referee addressing these issues would be subject to review by the court, with the court free to adopt the report, or modify it, or reject it in whole or in part, or hear further evidence, or recommit it with instructions. M.R. Civ. P. 53(e)(2). Thus, after the referee's report, the parties would be free to address all issues before the referee in a new hearing before the court that would essentially decide the issues again de novo. Because the proceeding before the referee on the narrow issues presented in this case would be superfluous to a later proceeding before the court, forcing the parties to endure the cost and delay occasioned by that proceeding would represent an irreparable loss that can be avoided by our immediate review. To avoid such a superfluous proceeding, in the past we have allowed interlocutory appeals of court orders referring an issue to a forum that has previously addressed the issue as an exception to the final judgment rule to reach the merits of appeals of remand orders. *See, e.g., Williams v. Williams,* 1998 ME 32, ¶¶ 5–7, 706 A.2d 1038; *Mahaney v. Miller's, Inc.,* 669 A.2d 165, 168 (Me.1995).

[¶ 29] *Williams* and *Mahaney* were decided based on the judicial economy exception to the final judgment rule. The judicial economy exception to the final judgment rule requires that, in at least one alternative, the ruling on appeal might entirely resolve the case. *U.S. Dep't of*

**7.** Appeals of orders for attachment or trustee process, as addressed in *Liberty,* are examples of interlocutory orders that are immediately appealable, even if they may not present a major and unsettled question of law.

*Agric., Rural Hous. Serv. v. Carter*, 2002 ME 103, ¶ 13, 799 A.2d 1232. That exception could not apply to support appeal of references over objection. However, *Williams* and *Mahaney* are examples of interlocutory appeals that have served to save the parties and the court the irreparable loss, delay, and expense inherent in engaging in an interim proceeding that can have little or no impact on the court's obligation to resolve the questions presented to it. Accordingly, *Maine Civil Practice* recommends the collateral order exception as the vehicle to reach appeals of opposed reference orders. *Harvey, supra,* § 53.1. The second "irreparable loss in absence of immediate review" element for review pursuant to the collateral order exception to the final judgment rule is met. This Court should proceed to address the merits of this appeal.

## C.  Reference Over Objection

[¶ 30] In referring the matter, the court stated that "it is in the interest of judicial economy for the Referee to hear the post-divorce motions because of the complex issues and the Referee's familiarity with the case." Despite the requirements of M.R. Civ. P. 53(b)(2) and 19–A M.R.S. § 252(1)(B), the court made no finding that there were exceptional circumstances or some exceptional condition requiring reference of the matter. Such findings would have been difficult to support in this case, as the issues presented were mostly legal, and any factual issues involved events subsequent to the referee's hearing and matters collateral to the issues presented to the referee.

[¶ 31] In family division practice, the filing of a post-judgment motion is treated as the commencement of a new action, the same as the filing of an original complaint for divorce or for establishment of parental rights. M.R. Civ. P. 101(a). Such actions must be commenced, as this post-judgment proceeding was commenced, by personal service on the other party, pursuant to M.R. Civ. P. 103. Responding parties must file an appearance and answer within twenty days after service. M.R. Civ. P. 105. Post-judgment motions, just like original complaints, must be accompanied by a properly completed summary sheet. M.R. Civ. P. 120(a).

[¶ 32] Appointment of a referee for such new actions filed as an original complaint or a post-judgment motion is governed by M.R. Civ. P. 119, which states: "The court may appoint a referee in any case where the parties agree that the case may be heard by a referee, pursuant to Rule 53." The advisory notes to Rule 119 further clarify that "[a]ppointment of a referee is allowed only by the agreement of the parties."

[¶ 33] Unlike Rule 119, the general reference rule, M.R. Civ. P. 53, allows a very narrow exception to appoint a referee over objection. Rule 53(b)(2) indicates, in pertinent part, that "[i]n absence of agreement of the parties, a reference shall be the exception and not the rule" and further specifies that "a reference shall be made only upon a showing that some exceptional condition requires it." Rule 53(b)(2) is thus similar to 19–A M.R.S. § 252(1)(B), permitting appointment of a referee over objection only after demonstrating exceptional circumstances.

[¶ 34] Assuming, arguendo, that Rule 53 provides some narrow exception to the unequivocal prohibition on opposed references stated in Rule 119 and the Rule 119 advisory notes, here there was no showing and no finding of "some exceptional condition" to justify an opposed reference order. "Judicial economy," the only justification stated in the court's order, cannot equate with "exceptional condition," if it did, the exception would be a blank check to delegate decision-making responsibility from overworked judges to referees. Moreover,

it is questionable how "judicial economy" is served by replacing one hearing before the court to decide the discrete questions presented on the post-judgment motions with three hearings: one to appoint the referee, one before the referee to develop a recommended decision on the post-judgment motions, and one back before the court to accept or reject the referee's report and decide those issues that only the court could decide. Judicial economy is not served by a process that results in three hearings on a post-judgment motion when one hearing would do.

[¶ 35] With the post-judgment motions before it, the trial court was obligated to hear and decide those motions, absent agreement of the parties or a finding of exceptional circumstances—neither of which is present here—to justify delegation of the initial decision-making responsibility to the referee.

[¶ 36] This Court should reach the merits of this interlocutory appeal from a judge's refusal to act on the business before the court and attempted delegation of the court's adjudicative responsibilities to a referee, in violation of the prohibition on such delegation stated in Rule 119 and applicable to post-judgment motions, which constitute a new Family Division action.