MAINE SUPREME JUDICIAL COURT                           Reporter of Decisions
Decision:    2014 ME 62
Docket:      BCD-13-64
Argued:      November 20, 2013
Decided:     May 1, 2014

Panel:       SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
             JABAR, JJ.

IRVING OIL LIMITED et al.

v.

ACE INA INSURANCE

MEAD, J.

[¶1]  Irving Oil Limited (IOL) appeals,[1] and ACE INA Insurance (ACE) cross-appeals, from an order entered in the Business and Consumer Docket (*Nivison, J.*) granting IOL's motion for summary judgment in part and denying it in part, and denying ACE's cross-motion for summary judgment.  The motions concerned Count I of IOL's complaint seeking a declaratory judgment requiring ACE to defend it in dozens of suits filed against IOL alleging liability for damage caused by the introduction of methyl tertiary butyl ether (MTBE), a gasoline additive, into the environment.  Although we conclude that a decision that an insurer does not have a duty to defend its insured is ordinarily immediately appealable under the death knell exception to the final judgment rule, the exception

---

[1]  The other named plaintiffs are Irving Oil Terminals, Inc., which imports gasoline refined by IOL into the United States from Canada, and Highlands Fuel Delivery, LLC, a Maine corporation that distributes gasoline in the United States for IOL.  This opinion refers to the plaintiffs collectively as IOL.

does not apply in this case because all of the MTBE suits against IOL have been settled. We therefore dismiss these interlocutory appeals.

## I. BACKGROUND

[¶2] Some sixty-two suits have been filed against IOL alleging environmental contamination by MTBE occurring from 1979 through the present day. At the time the court ruled on the summary judgment motions at issue here, one suit, captioned *State of New Hampshire v. Hess Corp.*, remained unsettled. That case has now settled as well, leaving no MTBE cases pending against IOL.

[¶3] During the period March 31, 1998, to March 31, 2000, IOL carried primary insurance coverage provided by the Royal Insurance Company of Canada (Royal Canada), and excess coverage provided by ACE. ACE asserts that IOL may have had other policies that also provided primary coverage during that period, but because ACE cited no evidence in the summary judgment record to support that assertion, the trial court found that only Royal Canada provided primary coverage, and that Royal Canada's coverage had been exhausted. The court found that the summary judgment record was silent concerning whether IOL had sought a defense from other primary insurers it had from 1979 to 1998 and 2000 to 2001, or whether the limits of those policies had been exhausted.

[¶4] In 2009, IOL filed a two-count complaint in the Superior Court, asking it to declare that ACE had a duty to defend (Count I) and a duty to indemnify

(Count II) in the MTBE suits. The case was transferred to the Business and Consumer Docket. In 2010, both parties moved for summary judgment, disagreeing on the issue of whether a pollution exclusion in IOL's policy applied to relieve ACE of a duty to defend. The court denied the motions after finding that an exception to the pollution exclusion might apply, resulting in a duty to defend, but the parties' failure to make the particulars of each MTBE complaint part of the summary judgment record prevented it from performing the necessary analysis.

[¶5] In 2012, IOL filed a renewed motion for summary judgment, asserting that ACE had a duty to defend it in six representative cases, including *New Hampshire v. Hess Corp.* ACE requested summary judgment in its favor, arguing that (1) IOL had not demonstrated the necessary prerequisite that it had exhausted all primary insurance coverage before seeking a defense by the excess insurer; and (2) the pollution exclusion applied, precluding a duty to defend. The court focused solely on the *New Hampshire* case as the only suit still pending, observing that it was "the only remaining suit . . . where the duty to defend (as opposed to the duty to indemnify) is still relevant." It denied ACE's motion in its entirety and granted IOL's motion in part, ruling that the pollution exclusion did not preclude coverage under the ACE excess policy because an exception to the exclusion might be shown to apply.

[¶6]   The court denied summary judgment insofar as IOL sought an immediate declaration that ACE had a duty to defend it, concluding that the meaning of the phrase "the underlying insurance" in the policy was ambiguous and required extrinsic evidence to determine the parties' intent in using it.  That issue was significant because under the terms of the policy, ACE's duty to defend IOL was triggered "if [the] limits of liability of the underlying insurance are exhausted."  Accordingly, if, as IOL argued, "the underlying insurance" meant only the Royal Canada primary insurance in force during the two-year period when ACE's excess policy was in force, then ACE's duty to defend became a live question when the Royal Canada policy was exhausted—a "vertical exhaustion" principle.  If, on the other hand, as ACE argued, "the underlying insurance" meant all of IOL's primary policies that had been in force during any part of the continuous-loss period alleged in the MTBE suits, then IOL was required to show that all of those polices had been exhausted before any excess policy was triggered—a "horizontal exhaustion" theory.  After a detailed analysis, the court concluded that it could not resolve the meaning of the phrase "the underlying insurance" solely by examining the policy language, and therefore could not declare that IOL was entitled to a judgment on the duty-to-defend count as a matter of law.

[¶7] IOL appealed the trial court's denial of a declaration requiring ACE to defend it. ACE argues that IOL's appeal should be dismissed as taken from a nonfinal judgment, and, alternatively, has cross-appealed, contending that it is entitled to summary judgment because (1) IOL failed to show exhaustion of its primary coverage under either a horizontal or vertical exhaustion theory, and (2) the policy's pollution exclusion applies.

## II. DISCUSSION

[¶8] Before reaching the merits of the parties' arguments, we must first determine whether IOL's interlocutory appeal is properly before us. The long-standing final judgment rule requires that, "[w]ith limited exceptions, a party may not appeal a decision until a final judgment has been rendered in the case." *Austin v. Universal Cheerleaders Ass'n*, 2002 ME 174, ¶ 4, 812 A.2d 253. Although the rule is not jurisdictional, *see Forest Ecology Network v. Land Use Regulation Comm'n*, 2012 ME 36, ¶ 16, 39 A.3d 74, it is supported by "[a] compelling rationale," in that it "prevents piecemeal litigation, and helps curtail interruption, delay, duplication and harassment; it minimizes interference with the trial process; it serves the goal of judicial economy; and it saves the appellate court from deciding issues which may ultimately be mooted." *Fiber Materials, Inc. v. Subilia*, 2009 ME 71, ¶ 12, 974 A.2d 918 (citation omitted).

6

[¶9]  Because the entry of a partial summary judgment "does not dispose of all issues in controversy," *Norton v. Town of Long Island*, 2003 ME 25, ¶ 6, 816 A.2d 59, "[w]e . . . recognize[] that [it] is not a judgment on the whole case and that an appeal taken from entry of a partial summary judgment is generally interlocutory and nonappealable."  *O'Connor v. Counseling Servs., Inc.*, 2008 ME 114, ¶ 3, 951 A.2d 78.  Accordingly, we will dismiss this interlocutory appeal unless an exception to the final judgment rule applies.  *See id.*; *Norton*, 2003 ME 25, ¶ 6, 816 A.2d 59.

[¶10]   Three of the most commonly discussed exceptions to the final judgment rule are the death knell, collateral order, and judicial economy exceptions.[2]  *See Bond v. Bond*, 2011 ME 105, ¶ 7, 30 A.3d 816.  IOL contends that its right to a defense prepared and funded by ACE is lost if the duty-to-defend issue is not resolved now, and therefore all three exceptions, as well as the "extraordinary circumstances" exception,[3] apply.  For the following reasons, we

---

[2]  We have recognized other claim-specific exceptions allowing an immediate appeal, for example appeals from the grant or denial of an order for attachment or trustee process, *see* Alexander, *Maine Appellate Practice* § 304(b) at 228 (4th ed. 2013); a civil defendant's claim of immunity, *id.* § 304(d) at 230; a criminal defendant's assertion of a double jeopardy bar, *id.* § 304(e) at 232; or when a separation of powers question arises, *see Forest Ecology Network v. Land Use Regulation Comm'n*, 2012 ME 36, ¶ 18, 39 A.3d 74.

[3]  We have noted that additional exceptions to the final judgment rule might be recognized "if the extraordinary circumstances of a case warrant doing so."  *Austin v. Universal Cheerleaders Ass'n*, 2002 ME 174, ¶ 8, 812 A.2d 253 (quotation marks omitted); *see Estate of Dore v. Dore*, 2009 ME 21, ¶ 16, 965 A.2d 862 (declining to apply the extraordinary circumstances exception).  We discern no extraordinary circumstances in this case that would trigger the exception.

agree that the death knell exception ordinarily allows an immediate appeal from an order declaring that an insurer has no duty to defend its insured.[4] However, the exception does not apply when, as in this case, the suit potentially giving rise to the duty to defend has been settled and the insured is no longer subject to ongoing litigation in that matter. We have said that

> [p]ursuant to the death knell exception, an interlocutory appeal is permitted only when substantial rights of a party will be irreparably lost if review is delayed until final judgment. The cost and delay of litigating [absent an interlocutory appeal] does not qualify as a loss of substantial rights or permanent foreclosure of relief. . . . Application of the death knell exception is a fact-specific inquiry that requires examination of the merits of each case.

*Quirion v. Veilleux*, 2013 ME 50, ¶ 8, 65 A.3d 1287 (citations and quotation marks omitted).

[¶11] When an insured is a defendant in an active lawsuit, then a trial court's order declaring that the insurer has no duty to defend, or, as occurred here, an order declining to decide the question, deprives the insured of an insurer-provided defense in the initial stages of the action. Those stages may

---

4 The collateral order exception does not apply here because that exception ordinarily requires that the issue raised on interlocutory appeal "present[] a major unsettled question of law." *Bond v. Bond*, 2011 ME 105, ¶ 11, 30 A.3d 816. *But see Centrix Bank & Trust v. Kehl*, 2012 ME 52, ¶ 16, 40 A.3d 942 ("In the context of appeals from orders for attachment or trustee process . . . we have, at least implicitly, concluded that such orders are immediately appealable, regardless of whether they present a major and unsettled question of law."). An insurer's duty to defend its insured does not present such a question. The judicial economy exception applies "when a decision on the appeal . . . regardless of what it is, would effectively dispose of the entire case." *Bond*, 2011 ME 105, ¶ 12, 30 A.3d 816 (quotation marks omitted). Here, if we decide that ACE has a duty to defend IOL, the issue of whether it also has a duty to indemnify remains both unresolved and likely to result in further appeals.

8

include assessing the suit's viability, conducting settlement negotiations, deciding whether to settle, engaging in discovery, and filing a motion for summary judgment. The expertise of the insurer in defending cases is just as essential in this critical pretrial phase as it is at the trial itself; indeed, given the large number of civil cases that do not proceed to trial, perhaps more so.

[¶12] Accordingly, the threshold for triggering an insurer's duty to defend is low. We have said that "*[r]egardless of extrinsic evidence*, if the complaint—read in conjunction with the policy—reveals a mere *potential* that the facts may come within the coverage, then the duty to defend exists." *Cox v. Commonwealth Land Title Ins. Co.*, 2013 ME 8, ¶ 9, 59 A.3d 1280 (first emphasis added); *see Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶¶ 9-10, 36 A.3d 876 (describing comparison test). That is so because the duty to defend and the duty to indemnify are separate issues that are analyzed under entirely different methodologies. Determining the duty to defend requires a court to compare two documents that exist at the outset of a suit against an insurer—the complaint and the policy—while determining the duty to indemnify requires a comparison of the policy with the facts established at trial to see if what actually occurred (as opposed to what potentially occurred) is covered. *See Mitchell*, 2011 ME 133, ¶ 9, 36 A.3d 876 ("*Only* the complaint and the policy are considered in determining whether the insurer has a duty to defend." (emphasis added)). For that reason, the duty-to-defend issue can, and should, be resolved

early in the case, while the duty-to-indemnify question cannot be resolved until the material facts are admitted or established by a fact-finder.

[¶13]  Because "the duty to defend is broader than the duty to indemnify . . . [a]n insurer may have a duty to defend even against a complaint that could not survive a motion to dismiss," *id.* ¶ 10 (citation omitted), and may be required to defend its insured "when there may be no ultimate duty to indemnify," *Merrimack Mut. Fire Ins. Co. v. Brennan*, 534 A.2d 353, 354 (Me. 1987).  Furthermore, "*any ambiguity in the policy regarding the insurer's duty to defend is resolved against the insurer.*"  *Mitchell*, 2011 ME 133, ¶ 11, 36 A.3d 876 (emphasis added).

[¶14]  In an analogous circumstance, we allow an interlocutory appeal from an order disqualifying a party's attorney "because an improper disqualification involves a disadvantage and expense that cannot be remedied after the conclusion of the case."  *Liberty v. Bennett*, 2012 ME 81, ¶ 16, 46 A.3d 1141 (quotation marks omitted); *see also* Alexander, *Maine Appellate Practice* § 304(f) at 232 (4th ed. 2013) (citing cases).  In other words, the question of whether a party is entitled to be represented by counsel of the party's choosing must be determined early in the case, or that right is lost.  Likewise, when a trial court enters an order finding that an insurer has no duty to defend, or defers a decision on that question, the insured's right to the defense it chose when it took out the policy must be determined early on, or it too will be irreparably lost.

[¶15] Given the foregoing, if IOL currently faced trial in any of the MTBE suits, then we would apply the death knell exception and reach the merits of its appeal. IOL's invocation of the exception loses its force, however, because, as IOL confirmed at oral argument, all of the cases against it have been settled and no additional suits are currently pending. There is, quite simply, nothing for ACE to defend IOL against. IOL's belief that future similar lawsuits are inevitable, and that it must have our opinion regarding ACE's prospective duty to defend in those matters, is insufficient to justify a departure from well-established jurisprudence prohibiting advisory opinions.[5] ACE's liability for defense costs in the settled matters will be resolved when the indemnification issues are addressed in due course. The cost or delay incident to litigating liability for defense costs to final judgment will not, by itself, cause a loss of substantial rights or permanent foreclosure of relief to justify an interlocutory appeal pursuant to the death knell exception to the final judgment rule. *Quirion*, 2013 ME 50, ¶ 8, 65 A.3d 1287; *Dairyland Ins. Co. v. Christensen*, 1999 ME 160, ¶ 8, 740 A.2d 43. As we observed in *Dairyland*, "[i]f it were otherwise, and the cost of further litigation alone justified interlocutory appeals, a further cost of litigation exception would swallow the final judgment rule, opening every interlocutory ruling to appeal."

---

[5] A decision providing no "real or effective relief," *Clark v. Hancock Cnty. Comm'rs*, 2014 ME 33, ¶ 12, --- A.3d --- (quotation marks omitted), may result in "an advisory opinion, which we have no authority to render except on solemn occasions, as provided by the Maine Constitution." *Flaherty v. Muther*, 2011 ME 32, ¶ 87, 17 A.3d 640.

1999 ME 160, ¶ 8, 740 A.2d 43; *see also Bank of N.Y. v. Richardson*, 2011 ME 38, ¶ 10, 15 A.3d 756.

[¶16] With no viable controversy remaining in the underlying MTBE suits, IOL may not invoke the death knell exception to obtain an advisory opinion regarding ACE's retroactive duty to defend, although we would properly be called upon to give our opinion if one of the MTBE cases were still ongoing.

[¶17] As a practical matter, an insurer would be ill-advised to consider delaying providing a defense in the hope that the underlying suit will settle. Both ACE and future insurers contemplating a similar situation remain liable for all costs incurred by their insured in reaching a settlement if it is later determined that a duty to defend exists. Those costs, as well as settlement payouts subject to the insurer's potential duty to indemnify, may well be substantially greater if the insured proceeds without the assistance of its experienced insurer. Furthermore, insurers are vulnerable to an action for breach of contract and an appropriate award of damages in the case of an unjustified denial of coverage.

[¶18] The more likely danger if we accept this appeal is that we will issue an improper advisory opinion concerning ACE's duty to defend IOL in future MTBE suits that may never materialize. Defendants who, like IOL, face the potential for multiple ongoing suits might well choose to settle the first suits filed if they are confident that we will then resolve uncertainty in their insurance

coverage as to all future suits—exactly the kind of advisory opinion that we are required to avoid. *See Flaherty v. Muther*, 2011 ME 32, ¶ 87, 17 A.3d 640.

[¶19] The specific issue that remains to be decided in this case is not whether ACE must defend IOL, because there are no active claims to defend against, but rather whether ACE must reimburse IOL for the legal expenses it incurred in settling the suits. That question can be reviewed on appeal, without IOL suffering the irreparable loss of its policy rights, following a final judgment that also decides the separate remaining question of whether ACE must indemnify IOL for its settlement payouts. Accordingly, the death knell exception to the final judgment rule, which would ordinarily apply in appeals arising from a trial court's denial of a duty-to-defend claim, does not apply under the circumstances of this case, and we must dismiss the appeals.

The entry is:

Appeal and cross-appeal dismissed.

---

**On the briefs:**

David B. McConnell, Esq., and Dawn M. Harmon, Esq., Perkins Thompson, P.A., Portland, and William F. Greaney, Esq., and Charles Fischette, Esq., Covington & Burling LLP, Washington, D.C., for appellant Irving Oil

Brett R. Leland, Esq., Freidman, Gaythwaite, Wolf, Portland, and Jonathan D. Hacker, Esq., O'Melveny & Myers LLP, Washington, D.C., for appellee ACE INA Insurance

**At oral argument:**

William F. Greaney, Esq. for appellant Irving Oil

Jonathan D. Hacker, Esq., for appellee ACE INA Insurance

Business and Consumer Docket docket number CV-2009-35
FOR CLERK REFERENCE ONLY