Majority: SAUFLEY, C.J., and MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Concurrence:
ALEXANDER, J.
JABAR, J.
[¶ lj Dawn M. Harlor appeals from a summary judgment entered by the Superi- or Court (Knox County, Billings, J.) in favor of Arnica Mutual Insurance Company on Harlor’s complaint that Arnica breached Harlor’s homeowner’s insurance policy by failing to defend Harlor in a lawsuit against her. Because the suit against Harlor included allegations that could potentially result in an award of damages covered by Harlor’s homeowner’s policy, Arnica was bound to provide Harlor a defense. We therefore vacate the judgment and remand for the entry of a summary judgment in favor of Harlor on her claim for breach of contract relating to the duty to defend and remand for further proceedings on Harlor’s claim for indemnification.
I. BACKGROUND
[¶ 2] The relevant facts are not in dispute. In March 2013, Jon and Winifred Prime brought suit against Harlor. The suit arose from a dispute between the parties over the Primes’ right to use a dock according to an easement Harlor had granted to the Primes. The Primes alleged that, acting according to an agreement with Harlor, they made certain improvements to the dock that resulted in the removal of a restriction on the size of the boats they were allowed to maintain at the dock. The Primes alleged that when Har-lor later sold the dock, she obtained— through false statements and undue pressure—the Primes’ agreement to a “Confirmation of Easement” that may not have reflected the removal of the boat size restriction. The Primes further alleged that, following Harlor’s sale, Harlor refused to confirm the Primes’ right to use the dock for larger boats and made false statements regarding the Primes’ right to use the dock. Harlor’s actions, the Primes alleged, resulted in uncertainty regarding the easement and prevented the Primes from selling property that benefitted from the easement.
[¶ 3] The Primes brought a complaint against Harlor, seeking damages for slander of title, interference with an advantageous relationship, unjust enrichment, fraud, and negligent misrepresentation, and seeking through separate counts a declaratory judgment and punitive damages. The crux of the suit was a determination as to whether, by the terms of the agreement between Harlor and the Primes, the Primes’ improvements to the dock removed the boat size restriction contained in the easement.
[¶ 4] At all relevant times, Harlor was insured by Arnica under a homeowner’s insurance policy that provided that Arnica would defend Harlor against claims that may result in covered damages. Harlor notified Arnica of the Primes’ suit and requested that Arnica provide a defense. In April 2013, Arnica denied Harlor’s request based on its conclusion that the suit could not result in covered damages.
[¶ 5] Harlor settled the suit with the Primes and brought suit against Arnica. Harlor sought a declaratory judgment that Arnica had been obligated to provide Har-lor with a defense to the Primes’ suit and claimed a breach of contract based on Arni-ca’s failure to defend her. Both parties moved for summary judgment. The court granted Arnica’s motion, concluding that any damages that might have resulted from the suit against Harlor would not be *797 covered by Harlor’s policies and consequently, did not give rise to a duty to defend.[1]
II. DISCUSSION
[¶ 6] On appeal, Harlor argues that Arni-ca had a duty to tender her a defense because the Primes’ claim for interference with an advantageous relationship created a potential that the Primes could have proved facts at trial that would have established liability covered by Haiior’s insurance policy. She also contends that Arnica is liable for the attorney fees she incurred in the underlying action with the Primes and in this declaratory judgment action, as well as the amount that she paid to settle the underlying claim.
A. An Insurer’s Duty to Defend
[¶ 7] Whether an insurer has a duty to defend an insured is a question of law. York Ins. Grp. of Me. v. Lambert, 1999 ME 173, ¶4, 740 A.2d 984. As with summary judgment review in other contexts, here we consider de novo whether the trial court erred in granting summary judgment to Arnica on Harlor’s claim that Arnica breached its duty to defend. See Hardenbergh v. Patrons Oxford Ins. Co., 2013 ME 68, ¶ 12, 70 A.3d 1237. Because the relevant facts are not in dispute; we review the summary judgment for errors of law, including errors in the interpretation of the insurance policy. See Howe v. MMG Ins. Co., 2014 ME 78, ¶5, 95 A.3d 79; Langevin v. Allstate Ins. Co., 2013 ME 55, ¶ 7, 66 A.8d 585. We therefore independently examine the language of the policy at issue to determine the scope of coverage, and then consider the general allegations of the Primes’ complaint “to determine whether it falls within the scope of the policy’s coverage.” Hardenbergh, 2013 ME 68, ¶ 14, 70 A.3d 1237.
[¶ 8] To determine whether an insurer has a duty to defend, a court considers and compares two documents: the insurance policy and the underlying complaint against the insured. Irving Oil, Ltd. v. ACE INA Ins., 2014 ME 62, ¶ 12, 91 A.3d 594. An insurer has a duty to defend an insured when the complaint, read broadly in conjunction with the policy, reveals the existence of any legal or factual basis that could potentially be developed at trial and result in an award of damages covered by the terms of the policy.[2] Howe, 2014 ME 78, ¶¶ 6, 10, 95 A.3d 79; L. Ray Packing Co. v. Commercial Union Ins. Co., 469 A.2d 832, 833 (Me. 1983). Although courts “do not speculate about causes of action that were not stated[,] .... our rules of notice pleading favor a broad construction of the duty to defend.” York Golf & Tennis Club v. Tudor Ins. Co., 2004 ME 52, ¶ 8, 845 A.2d 1173 (citations omitted). “The facts alleged in the complaint need not make out a claim that specifically and unequivocally falls within the coverage. Rather, where the events giving rise to the complaint may be shown at trial to fall within the policy’s coverage, an insurer *798 must provide the policyholder with a defense.” Mitchell v. Allstate Ins. Co., 2011 ME 133, ¶ 10, 36 A.3d 876 (quotation marks omitted) (citations omitted). We have explained the comparison test and its “low” threshold for triggering an insurer’s duty to defend, Irving Oil, 2014 ME 62, ¶ 12, 91 A.3d 594, as a test and a threshold designed to “discourage mini-trials on the issue of the duty to defend,” Me. Bonding & Cas. Co. v. Douglas Dynamics, Inc., 594 A.2d 1079, 1080 (Me. 1991); see Lambert, 1999 ME 173, ¶ 5, 740 A.2d 984 (“We see no reason why the insured, whose insurer is obligated by contract to defend him, should have to try the facts in a suit against his insurer in order to obtain a defense.” (quotation marks omitted)).
B. Harlor’s Homeowner’s Policy
[¶ 9] Harlor’s homeowner’s insurance policy included the following coverage for personal liability:
If a claim is made or a suit is brought against an insured for damages because of bodily injury ... caused by an occurrence to which this coverage applies, we will:
1. Pay up to our limit of liability for the damages for which an insured is legally liable. Damages include prejudgment interest awarded against an insured; and
2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the occurrence has been exhausted by payment of a judgment or settlement.
[¶ 10] The policy defined “occurrence” in relevant part as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period in ... [b]odily injury.” The term “bodily injury” was defined as “bodily harm, sickness or disease, including required care, loss of services and death that results.”
[¶ 11] Referencing the personal liability provision of her homeowner’s policy, Har-lor argues that Arnica was required to defend her because the Primes could potentially have recovered damages for emotional distress and bodily harm caused by such distress on their claim of interference with an advantageous relationship.
C.Duty to Defend Claim of Interference with an Advantageous Relationship
[¶ 12] To establish a claim of interference with an advantageous relationship, the Primes would have had to prove “the existence of a valid contract or prospective economic advantage, interference with that contract or advantage through fraud or intimidation, and damages proximately- caused by the interference.” Barnes v. Zappia, 658 A.2d 1086, 1090 (Me. 1995). Generally, a plaintiff claiming tortious interference alleges that the defendant interfered with a contract or prospective economic advantage involving the plaintiff and someone other than the defendant. See generally Currie v. Indus. Sec., Inc., 2007 ME 12, 915 A.2d 400; Rutland v. Mullen, 2002 ME 98, 798 A.2d 1104; Petit v. Key Bank of Me., 688 A.2d 427 (Me. 1996); MacKerron v. Madura, 445 A.2d 680 (Me. 1982), superseded by statute, P.L. 1987, ch. 740, § 8 (effective Aug. 4, 1988) (codified at 14 M.R.S.A. § 8111(1)(E) (1980 & Supp. 1988)); see also 3 Dan B. Dobbs, The Law of Torts § 616 at 498 (2d ed. 2011).
[¶ 13] At the outset, we disagree with the concurring opinion’s proposition that Maine law demands that the fraud or *799 intimidation required as an element of a tortious interference claim must be directed at an identified third party, not at the plaintiff. We have never announced such a limitation on Maine’s common law, and we decline to do so now. As the First Circuit has noted, in Massachusetts, a plaintiff can make out a claim for this tort by alleging either (a) that the defendant interfered with the plaintiffs advantageous relationship with a third party by committing fraud or intimidation against the third party or (b) that the defendant interfered with the plaintiffs relationship with a third party by committing fraud or intimidation against the plaintiff. See, e.g., O’Donnell v. Boggs, 611 F.3d 50, 54 (1st Cir. 2010) (interpreting Massachusetts tort law); Restatement (Second) of Torts §§ 766A, 766B (Am. Law Inst. 1979).
[¶ 14] Here, the Primes claimed in their complaint that Harlor interfered with the Primes’ prospective advantageous relationship with potential buyers by committing fraud and intimidation against the Primes. This claim requires us to consider, as we do below, whether the Primes’ complaint alleged facts that could give rise to the type of damages that would invoke Arnica’s duty to defend Harlor pursuant to Harlor’s insurance policy.
[¶15] We have not previously spoken definitively on the availability of emotional distress damages on a claim of interference with an advantageous relationship and, because the issue here is Arnica’s duty to defend, we need not do so now. See Gagnon v. Turgeon, 271 A.2d 634, 635 (Me. 1970) (holding that a party who interferes with an advantageous relationship- “is liable in damages for such injuries as naturally result therefrom”); Restatement (Second) of Torts § 774A(l)(c) (Am. Law Inst. 1979) (“One who is liable to another for interference with á contract or prospective contractual relation is liable for damages for ... emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.”); see also Lambert, 1999 ME 173, ¶ 7, 740 A.2d 984 (“allegations of the interference with an expectancy of inheritance claim carry the possibility of an award for emotional distress”).
[¶ 16] Although the Primes’ claim for interference with an advantageous relationship did not specifically include allegations of emotional distress or bodily injury, or a request for money damages for the same, the comparison test tránscends the specific factual allegations and forms of- relief requested in the complaint. “ ‘Precision’ ... is not necéSsary for determining a duty to defend. The correct test is whether a potential for liability within the coverage appears from whatever allegations are made.” Travelers Indem. Co. v. Dingwell, 414 A.2d 220, 226 (Me. 1980). Moreover, “the fact that the complaint itself did not request monetary damages, in its prayers for relief, does not end the matter. A court can grant relief to a plaintiff that is not requested in a complaint if the plaintiff is entitled to the relief and the judgment is not granted by default.” York Golf & Tennis Club, 2004 ME 52, ¶ 12, 845 A.2d 1173. We accordingly look to the general allegations for the particular claims asserted in the underlying complaint to determine whether they could potentially support an award of covered damages for bodily injury caused' by emotional distress, resulting from an “occurrence” within the meaning of Harlor’s homeowner’s insurance policy.
[¶ 17] In their complaint, the Primes asserted that Harlor “interfered with [their] attempts to sell their real estate through bad faith conduct, fraud[,] ... intimidation, ... [and] misrepresentations with respect to both the status of [their] easement and with respect to the Confir *800 mation of Easement.” The Primes further asserted that they were “damaged by [Harlor’s] fraudulent interference in that they have been unable to sell their property.”
[¶ 18] The Primes’ allegations regarding the damages flowing from Harlor’s allegedly tortious conduct arguably constitute an “accident or occurrence” within the meaning of the personal liability provisions of Harlor’s homeowner’s policy. See Vigna v. Allstate Ins. Co., 686 A.2d 598, 600 (Me. 1996) (“The ‘accidental’ nature of an event for purposes of a standard liability insurance contract ... does not derive from the voluntariness of the act, but rather from the unintentional nature of the consequences flowing from the act.”). Because the., Primes’ allegations of Harlor’s allegedly tortious actions—specifically, interference with the Primes’ prospective advantageous relationship with potential buyers through intimidation and fraud—could have resulted in harm to the Primes, including bodily harm due to emotional distress, Harlor could have been found liable for a type of damages covered by the personal liability provisions of her homeowner’s policy.[3]
[¶ 19] Comparing the general allegations of the Primes’ complaint with the terms of Harlor’s homeowner’s policy, there was a possibility that the Primes could have established that they suffered bodily injury as a result of emotional distress caused by Harlor’s actions. See Douglas Dynamics, 594 A.2d at 1081. Arnica was therefore bound by the terms of its insurance contract with Harlor to provide her a defense to the Primes’ suit, and it breached that contractual obligation by failing to do so.[4]
D. Whether Arnica is Liable for Harlor’s Settlement
[¶ 20] Having determined that Arnica breached its duty to defend, we now consider the proper measure of Harlor’s damages. Although Arnica concedes that its breach of the duty to defend would render it liable for the attorney fees that Harlor incurred in the underlying action with the Primes and. in the instant action for a declaratory judgment,[5] it argues that it is not liable for Harlor’s payment to the Primes in settlement because that payment does not establish that the Primes actually sustained an injury covered by Harlor’s homeowner’s policy. Harlor argues that her settlement costs should be awarded as consequential damages for Arnica’s breach of the duty to defend, and that Arnica, by breaching that duty, lost the right to hold Harlor to the burden of proving that she was liable for damages covered by her homeowner’s policy.
[¶ 21] “Standard ... liability insurance policies are contracts between an insurer and an insured: In each, the
*801 insurer makes promises, and the insured pays premiums, the one in consideration for the other, against the risk of loss.” Aerojet-Gen. Corp. v. Transp. Indem. Co., 17 Cal.4th 38, 70 Cal.Rptr.2d 118, 948 P.2d 909, 919 (1997). An insurer’s unjustified refusal to defend its insured constitutes a breach of the insurance contract, and the insured’s claim for relief is analyzed pursuant to principles of contract damages. Elliott v. Hanover Ins. Co., 1998 ME 138, ¶ 11, 711 A.2d 1310. An award of damages to the insured for breach of an insurer’s duty to defend should therefore place the insured “in a position equally as good as the insured would have occupied had the insurance contract been fully and properly performed from the beginning.” Foremost Ins. Co. v. Levesque, 2007 ME 96, ¶ 10, 926 A.2d 1185 (quotation marks omitted).
[¶ 22] An 'insurer’s breach of the duty to defend does not, when analyzed pursuant to ordinary principles of contract law, necessarily warrant an award of damages to the insured in reimbursement of a judgment or settlement related to the ultimate question of the insured’s liability. We “have repeatedly stated that an insurer’s duty to indemnify, is independent from its duty to defend.” Elliott, 1998 ME 138, ¶ 11, 711 A.2d 1310. In evaluating an insurer’s liability for a settlement that potentially involves both covered and uncovered claims following the insurer’s breach of the duty to defend, we are mindful of the distinction between that duty and the narrower duty to indemnify.
[¶ 23] “[Standard. ... liability insurance policies provide that the insurer has a duty to indemnify the insured for those sums that the insured becomes legally obligated to pay as damages for a covered claim.” Aerojel-Gen. Corp., 70 Cal. Rptr.2d 118, 948 P.2d at 919. This duty “runs to claims that are actually covered, in light of the facts proved.” Id. An insurer’s contractual duty to indemnify is thus “limited to so much of the judgment or settlement as was fairly allocable to the claims that were covered by the policy.” Charter Oak Fire Ins. Co. v. Hedeen & Cos., 280 F.3d 730, 738 (7th Cir. 2002) (quotation marks omitted) (alteration omitted). This narrow duty to reimburse the insured for liability for covered damages is unaltered by a breach of the independent duty to defend. See Esicorp, Inc. v. Liberty Mut. Ins. Co., 193 F.3d 966, 970-71 (8th Cir. 1999) (concluding that a breach of the duty to defend does not expand the duty to indemnify); Ala. Farm Bureau Mut. Cas. Ins. Co. v. Moore, 349 So.2d 1113, 1116 (Ala. 1977) (same). To award to the insured the entire settlement as consequential damages after a breach of the duty to defend, when some claims against the insured were for covered damages and others were for uncovered damages, would “improperly enlarge[] the bargained-for coverage.” Elliott, 1998 ME 138, ¶ 11, 711 A.2d 1310 (quotation marks omitted).
[¶ 24] For these reasons, we have held that an insurer does not, by breaching the duty to defend, lose the right to assert noncoverage as a defense to a claim for indemnification brought by the insured. Id. However, we have also held that if an insurer wrongfully declines to defend a claim, it assumes the burden of proving noncoverage.[6] Id.; accord Liquor Liab. Joint Underwriting Ass’n v. Hermitage Ins. Co., 419 Mass. 316, 644 N.E.2d 964, 968 (1995); Sentinel Ins. Co. v. First Ins. Co., 875 P.2d 894, 914 (Haw. 1994) (recognizing a presumption of coverage following *802 the insurer’s breach of the duty to defend); Isaacson v. Cal. Ins. Guar. Ass’n, 44 Cal.3d 775, 244 Cal.Rptr. 655, 750 P.2d 297, 308 (Cal. 1988) (same).
[¶ 25] If the insurer can demonstrate that the liability of the insured is entirely uncovered by the insured’s policy, the insurer is not liable for any obligations incurred by the insured in a settlement. McNicholes v, Subotnik, 12 F.3d 105, 108 (8th Cir. 1993); Afcan v. Mut. Fire, Marine & Inland Ins. Co., 595 P.2d 638, 647 (Alaska 1979). However, “[i]t is not uncommon for a lawsuit against an insured to assert some claims that are covered by the insurance policy and others that are not.” Liberty Mut. Ins. Co. v. Metro. Life Ins. Co., 260 F.3d 54, 63 (1st Cir. 2001). “When the insured settles a claim after the insurer has breached its duty to defend, it is clear the insurer remains obligated to reimburse the insured for any settlement obligation covered by the liability policy,” Royal Ins. Co. of Am. v. Kirksville Coll. of Osteopathic Med., 304 F.3d 804, 806-07 (8th Cir. 2002). Therefore, a “settlement encompassing both covered and noncov-ered claims must be fairly apportioned between the two.” Id. at 807 (quotation marks omitted). The burden of establishing an appropriate apportionment of liability between covered and uncovered claims falls on the insurer. See Liberty Mut. Ins. Co., 260 F.3d at 63. If the insurer cannot meet this burden of proof, it may be held liable for the entire settlement. See Liquor Liab. Joint Underwriting Ass’n, 644 N.E.2d at 969 & n.6.
[¶ 26] Here, further proceedings are necessary to determine whether and to what extent Arnica is required to indemnify Harlor for the amount that she paid to settle the underlying action with the Primes.
The entiy is:
Summary judgment in favor of Arnica vacated. Remanded for the entry of summary judgment in favor of Harlor, declaring that Arnica breached its duty to defend, and for further proceedings regarding Arnica’s duty to indemnify Harlor for any or all of the sum that she paid to settle the underlying action.

. "We have previously noted that the duty to indemnify is more narrow than the duty to defend. Whereas the duty to defend depends only upon the facts alleged in the complaint, the duty to indemnify depends upon the facts proved at trial.” Union Mut. Fire Ins. Co. v. Topsham, 441 A.2d 1012, 1016 n.2 (Me. 1982).

. Although we have- never affirmatively announced that emotional distress bodily harm is a recoverable damage of this tort, neither have we declared that it is not recoverable.

. "Because an insurer has a duty to defend if any cause of action alleged in a complaint could fall within the policy’s liability coverage, we need not consider whether other theories of liability set forth in the [Primes’] complaint ... would have independently given rise to a duty to defend.” Mitchell, 2011 ME 133, ¶ 21, 36 A.3d 876 (citation omitted).

.In a declaratory judgment “action pursuant to Title 14, chapter 707 to determine an insurer’s contractual duty to defend an insured under an insurance policy, if the insured prevails in such action, the insurer shall pay court costs and reasonable attorney’s fees.” ■24-A M.R.S. § 2436-B(2) (2015). An insurer’s breach of the duty to defend damages the insured "not only in the amounts the insured has expended in defending the underlying claim but also in the amount of reasonable costs the insured has incurred in protecting its contractual right to defense.” Union Mut. Fire Ins. Co., 441 A.2d at 1017.

. By contrast, when an insured brings an action for breach of an insurer's contractual obligation of indemnity, the burden of demonstrating coverage lies with the insured. Pelkey v. GE Capital Assurance Co., 2002 ME 142, ¶¶ 8, 10, 804 A.2d 385.