STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & CONSUMER COURT
LOCATION: PORTLAND
Docket No. BCDWB-CV-2020-25

DR. WILLIAM COPPOLA, INC., and )
JEREMIAH J. LABREE, O.D., )
                           )
       Plaintiffs, )
                           )
     v. )
                           )
GREAT DIVIDE INSURANCE CO., )
                           )
       Defendants. )

**ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Before the Court is Plaintiffs Dr. William Coppola Inc. and Jeremiah J. LaBree, O.D.'s

motion to dismiss pursuant to M.R. Civ. P. 56. The case arises out of Defendant Great Divide

Insurance Co.'s ("Great Divide's") decision to disclaim coverage to Plaintiffs in the civil action

captioned *Danica Hooper v. Maine Health Penobscot Bay Medical Center, et al.,* Docket No.

CV-2018-35 currently pending in Knox County Superior Court (the "Underlying Action"). In

support of this motion, Plaintiffs rely on the Underlying Complaint, the Notice of Claim pursuant

to Title 24 M.R.S. § 2903, the insurance policy issued by Great Divide to Dr. William Coppola,

Inc. as named insured and the Stipulation of Facts. Plaintiffs are represented by Attorney James

Poliquin. Great Divide is represented by Attorney James Bowie.

**FACTUAL BACKGROUND**

Plaintiff Dr. Jeremiah LaBree is an optometrist, formerly employed by Dr. William V.

Coppola, Inc. (Stip. ¶¶ 1, 2.) Great Divide issued an Optometrist Professional Liability Policy

("the Policy") to Plaintiffs, with the policy number AOA-9007562P-1, in effect for the period of

October 7, 2015 through October 7, 2016. Additionally, Great Divide issued Optometrist

1

Professional Liability Policy AOA-9007562-P-2 to Plaintiffs, in effect from October 7, 2016 through December 31, 2016. Stip. ¶ 3.

According to the Policy, Plaintiffs received coverage for "Professional Liability." The policy provides in relevant part:

> . . . the Company will pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as Damages because of Bodily Injury or Property **Damage** caused by an **Incident** or **Personal Injury**, to which the insurance applies in the operation of the business or conduct of the profession of the **Named Insured** as specified in the Declarations; which occurs during the **Policy Period**.

*See* Exhibit A at 1. The terms in bold in the Policy are terms of art and are separately defined. In this case, "Incident" is defined as "any act or omission":

> A. in the rendering of or failure to render services by the Insured, or by any person for whom the Insured is legally responsible; including but not limited to services as a Good Samaritan or case management or utilization review services; or
>
> B. in the performance of services by the insured as a member of a formal accreditation, ethics, peer review, licensing board, standards review or similar professional board or committee of a professional organization; in the conduct of the business or professional occupation specified in the Declarations.
>
> Any such act or omission together with all related acts or omissions shall be considered one Incident and be subject to the same Limit of Liability.

*See* Exhibit A at 11. Further, "Personal Injury" is defined as "injury arising out of an offense committed during the Policy Period, if such injury results from":

> A. false arrest, detention or imprisonment, or malicious prosecution; or
>
> B. the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publications or utterances in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the Named Insured; or
>
> C. wrongful entry or eviction, or other invasion of the right of private occupancy

Any such act, described in A, B, or C above, together with all related acts described in A, B, or C above shall be considered on Personal Injury and be subject to the same Limit of Liability.

*See* Exhibit 1 at 12. Finally, "Policy Period" is defined as "the period from the inception date of this policy to the policy expiration date as set forth in the Declarations or its earlier termination date, if any." *See* Exhibit A at 12.

On August 15, 2018, a former patient of the Plaintiffs, Danica Hooper, named Plaintiffs in a Notice of Claim pursuant to 24 M.R.S. § 2903 of the Maine Health Security Act. In the Notice of Claim, Ms. Hooper alleged that Plaintiffs were negligent in the course of treating her. Ms. Hooper referenced September 17, 2015 and November 24, 2015 as dates of treatment. (Exhibit B, ¶¶ 19, 40.)

Great Divide initially denied coverage to Plaintiffs relating to the Notice of Claim, because the alleged events occurred prior to October 7, 2015, the inception date of the Policy. (Stip. ¶ 7.) However, Great Divide later agreed to defend the Notice of Claim because of the allegation of events that were within the Policy Period. (Stip. ¶ 8.)

Eventually, on November 27, 2019, Ms. Hooper filed the Underlying Action against Plaintiffs. According to the Complaint, Ms. Hooper was suffering from "severe papilledema" between the dates of September 17, 2015 and September 22, 2015. Ms. Hooper alleges that as a result of negligently rendered medical services provided by Plaintiffs, her "papilledema progressed, causing her to suffer a downward medical course and serious injuries including, but not limited to, extreme pain, suffering, blindness, loss of life's pleasures, loss of employment advancement opportunities and severe emotional distress." (Exhibit D, ¶ 36).

Great Divide initially denied Plaintiffs coverage on September 18, 2018 on the basis that the events in the Notice of Claim occurred before the October 7, 2015 inception date of the first

3

insurance policy. However, Great Divide later agreed to defend Plaintiffs because of the allegation of events within the coverage period. (*See* Stip. At ¶ 8 and Ex. C.)

Subsequent to a pre-screening litigation panel hearing, Ms. Hooper commenced a civil action against Dr. LaBree and the other named defendants. The Underlying Complaint alleges various claims for negligence and vicarious liability, including allegations that Plaintiffs negligently treated Ms. Hooper on September 17, 2015. However, the Underlying Complaint makes no reference to Ms. Hooper's treatment by Plaintiffs on November 24, 2015, after the inception of the insurance policy with Great Divide. (*See* Stip. 10.) As such, Great Divide concluded it did not have a duty to defend Plaintiffs in the Underlying Action and on or about January 2, 2020, withdrew its defense. (Stip. ¶ 10.) Plaintiffs assert that Great Divide still has a duty to defend and filed the case before the Court.

## LEGAL STANDARD

Summary judgment is appropriate if, based on the record, there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. M.R. Civ. P. 56(c); *Levine v. R.B.K. Caly Corp.,* 2001 ME 77, ¶ 4, 770 A.2d 653. A genuine issue of material fact exists when a factfinder must choose between competing versions of the truth, even if one party's version appears more credible or persuasive. *Id.* A fact is material if it has the potential to affect the outcome of the suit. *Id*. To survive a defendant's motion for summary judgment, the plaintiff must establish a prima facie case for every element of the plaintiff's cause of action. *Oceanic Inn, Inc., v. Sloan's Cove, LLC, 2016 ME 34,* ¶ 26, 133 A.3d 1021. Cross motions for summary judgment "neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment per se." *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646 (quoting *Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir. 1996)).

4

Maine Law resolves ambiguities in insurance contracts in favor of the insured. *Acadia Ins. Co. v. Vermont Mut. Ins. Co.,* 2004 ME 121, ¶ 5, 860 A.2d 390. A provision of an insurance contract is ambiguous if it is reasonably susceptible to different interpretations or if any ordinary person in the shoes of the insured would not understand that the policy did not cover claims such as those brought. *Travelers Indem. Co. v. Bryant,* 2012 ME 38, ¶ 9, 38 A.3d 1267. Maine Courts construe policy exclusions "strictly against the insurer and liberally in favor of the insured." *Union Ins. Co.,* 521 A.2d 308, 311 (Me. 1987). Finally, when interpreting insurance contracts, "specific terms and exact terms are given greater weight than general language." *Dow v. Billing,* 2020 ME 10, ¶ 21, 224 A.3d 244 (quoting Restatement (Second) of Contracts § 203(c). Am. Law Inst. 1981). In the case of conflict between general and specific terms, the specific terms are more likely to express the meaning of the parties. *Id.*

**DISCUSSION**

When considering insurance contracts, the duty to defend is broader than the duty to indemnify. *Penney v. Capitol City Transfer, Inc.,* 1998 ME 44, ¶ 5, 707 A.2d 387; s*ee Elliot v. Hanover Ins. Co.,* 1998 ME 138, ¶ 11, 711 A.2d 1310. Whether an insurer has a duty to defend in a particular case is a question of law. *Id.* Generally, the Court analyzes the duty to defend by comparing the allegations in the underlying complaint, read broadly, with the provisions of the insurance policy. *Id; Harlor v. Amica Mut. Ins. Co.,* 2016 ME 161, ¶ 8, 150 A.3d 793. This comparison is generally referred to as the "comparison test."

"If a complaint reveals a '*potential* . . . that the facts ultimately proved may come within the coverage,' a duty to defend exists." *Travelers Indem. Co. v. Dingwell,* 414 A.2d 220, 226 (Me. 1980). The facts alleged in the Underlying Complaint need not make out a claim that specifically and unequivocally falls within coverage. *Union Mut. Fire Ins. Co. v. Inhabitants of Topsham,* 441

A.2d 1012, 1015 (Me. 1982). Instead, Maine's rules of notice pleading favor a broad construction of the duty to defend. *Harlor,* 2016 ME 161, ¶ 8, 150 A.3d 793 (quoting *York Golf & Tennis Club v. Tudor, Ins. Co.,* 2004 ME 52, ¶ 8, 845 A.2d 1173.) Likewise, the comparison test has a "low threshold" for triggering an insurer's duty to defend, and aims to "discourage mini-trials on the issue. . ." *Id.* (citing *Irving Oil, Ltd. v. ACE INA Ins.,* 2014 ME 62, ¶ 12, 91 A.3d 594; *Me. Bonding & Cas. Co. v. Douglas Dynamics, Inc.,* 594 A.2d 1079, 1080 (Me. 1991). Accordingly, the Court must compare the allegations of the Underlying Complaint with the relevant provisions of the Great Divide insurance policy to determine whether there is any legal or factual basis that could be developed at trial and result in an award of damages covered by the terms of the policy. *Id.*

I.      **Application of the Comparison Test to the Policy and Underlying Complaint**

Defendant contends that the comparison test, applied to the Policy and Underlying Complaint, requires the Court to grant its motion for summary judgment. Specifically, because the four-corners of the Underlying Complaint do not mention a treatment date falling within the Policy Period, Defendant asserts that there is not even a potential that facts ultimately proved may come within coverage of the Policy. Conversely, Plaintiffs argue the Court must consider the Notice of Claim as part of its analysis, so not to leave Great Divide's duty to defend entirely contingent on the pleading choices of a third-party.

Generally, Maine courts have ignored extrinsic evidence when using the comparison test to determine whether an insurer had a duty to defend an insured. *See e.g. OneBeacon Am. Ins. Co. v. Johnny's Selected Seeds, Inc.,* 2014 U.S. Dist. LEXIS 53098 at *24 ("Evidence beyond the pleadings and the insurance contract—"extrinsic evidence"—is normally ignored in the analysis"); *Irving Oil, Ltd. v. ACE INA Ins.,* 2014 ME 62, ¶ 12, 91 A.3d 594; *Penney v. Capitol City Transfer,* 1998 ME 44, ¶ 6, 707 A.2d 387. However, the Law Court has left the door open to considering

6

extrinsic evidence for the purpose of discharging a duty to defend by means of a declaratory judgment action. *See Worcester Ins. Co. v. Dairyland Ins. Co.,* 555 A.2d 1050, 1053 (Me. 1989). In *Worcester Insurance Company,* the Law Court considered extrinsic evidence that a gunshot wound by the defendant insured was caused while loading a vehicle, which brought the injury within a policy exception. *Id.* The *Worcester* Court stated that "[f]acts known to an insurer by investigation or otherwise which prove noncoverage 'do not relieve the insurer of its obligation to defend, unless the duty is discharged by means of a declaratory judgment action." "In practice, no Maine case since *Worcester Insurance Company* has actually resolved a duty to defend based even in part on extrinsic evidence." *OneBeacon Am. Ins. Co.,* 2014 U.S. Dist. LEXIS 53098 at *25.

Despite Maine Courts' reluctance to consider extrinsic evidence in determining whether a duty to defend exists, the Court recognizes a significant commonality between the above cited cases: each involves an *insurer* attempting to disclaim its duty based on facts known to it. In these situations, courts have reiterated the low-threshold for triggering an insurer's duty to defend, and restated that the comparison test aims to avoid "mini-trials" where facts are presented to disclaim coverage. The Law Court has stated, "[w]e see no reason why the insured, whose insurer is obligated by contract to defend him, should have to try the facts in a suit against his insurer in order to obtain a defense. *Elliot v. Hanover Ins. Co.,* 1998 ME 138, ¶ 7, 711 A.2d 1310, 1312. The situation in this matter is the exact opposite. Here, the *insured* aims to present extrinsic evidence, in the form of a Notice of Claim, to demonstrate that there remains a potential for facts ultimately proved at trial to fall within coverage of the Policy.[1] Great Divide previously agreed to defend

---

[1] Though the Law Court has not previously decided whether an insured party may introduce extrinsic evidence to trigger a duty to defend, other jurisdictions have held that "Determination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy. *But the duty also*

7

Plaintiffs based on the facts detailed in the Notice of Claim, and only withdrew that defense when the Underlying Complaint excluded certain of those facts. The Court finds that consideration of the Notice of Claim furthers the goal of the comparison test, liberally construing the duty to defend and preventing the litigation of "mini-trials" when a potential exists that claims will fall under a policy's coverage.

Further, considering Maine law's broad construction of the duty to defend, the Court agrees with Plaintiffs that the existence of said duty should not be conditioned solely on the pleading choices of a third-party. According to Maine Law, "the plaintiffs in [an] underlying action are not subject to any requirement that every fact ultimately to be proved must be specifically alleged in their complaint. On the contrary, plaintiffs are only required to include in their complaint 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Travelers Indem. Co. v. Dingwell,* 414 A.2d 220, 225 (Me. 1980) (citing M.R. Civ. P. 8(a)). Maine law does not "require that the facts alleged specifically and unequivocally make out a claim within the coverage." *Id.* A defendant "has no power to amend a complaint which contains an incomplete statement of facts." *Id.* at 226. Thus, whether a defendant in an underlying action can obtain a defense from his insurer "must depend not on the caprice of the plaintiff's draftsmanship, nor the limits of his knowledge, but on *potential* shown in the complaint that facts ultimately proved may come within the coverage. *Id.*

Again, the facts alleged in the Underlying Complaint need not make out a claim that specifically and unequivocally falls within coverage. *Union Mut. Fire Ins. Co. v. Inhabitants of Topsham,* 441 A.2d 1012, 1015 (Me. 1982). In this matter, the Underlying Complaint alleges negligent treatment by Plaintiffs on September 17, 2015. The Notice of Claim, of which both

---

exists where extrinsic facts known to the insurer suggest that the claim may be covered." *Hyundai Motor Am. v. Nat'l Union Fire Ins. Co.,* 600 F.3d 1092, 1097-1098 (9th Cir. 2010) (emphasis added).

8

Plaintiffs and Great Divide were aware, alleged negligent treatment and referenced dates September 17, 2015, and November 24, 2015. The Policy, as part of its professional liability coverage, covers "bodily injury" caused by an incident. As previously stated, "Incident" is defined as "any act or omission":

> A. in the rendering of or failure to render services by the Insured, or by any person for whom the Insured is legally responsible; including but not limited to services as a Good Samaritan or case management or utilization review services;
>
> . . .
>
> Any such act or omission together with all related acts or omissions shall be considered one Incident and be subject to the same Limit of Liability.

Exhibit A at 11. Negligent medical treatment certainly qualifies as an act or omission in the "rendering or failure to render services by the insured." Therefore, comparing the allegations set forth in the Underlying Complaint, taking into account the Notice of Claim, with the Policy, the Court finds that a potential exists for facts ultimately proved at trial to fall within coverage of the Policy. Accordingly, the Court grants summary judgment in favor of the Plaintiffs.

## II. The Great Divide Insurance Policy is Unambiguous

In the alternative, Plaintiffs assert that the Policy is ambiguous, and as such must be resolved in their favor. Specifically, Plaintiffs assert that while the terms of the Professional Liability Policy make clear that coverage exists only within the policy period, the same limitation is not imposed on "incidents" covered by the policy.

While the Court recognizes that ambiguities indeed must be resolved in favor of the insured, no ambiguity exists in this matter. The insurance contract must be evaluated as a whole. *See e.g. Maine Drilling & Blasting, Inc. v. Insurance Co. of North America,* 665 A.2d 671, 675 (Me. 1995). The Policy clearly states that it covers: "all sums which the **Insured** shall become legally obligated to pay as Damages because of Bodily Injury or Property **Damage** caused by an

9

**Incident** or **Personal Injury**. . . which occurs during the Policy Period.**"** Exhibit A at 1 (emphasis in original). The Policy eventually proceeds to define the term of art "incident." *See* Exhibit A at 11. Although the Policy does not repeat that an incident giving rise to coverage must occur during the Policy Period, when evaluating the Policy as a whole, it is clear that such a limitation exists.

## CONCLUSION

For the foregoing reasons, the Plaintiffs Dr. William V. Coppolla Inc. and Dr. Jeremiah LaBree's Motion for Summary Judgment is granted. The existence of facts regarding dates of Ms. Hooper's treatment within the Policy Period, detailed in the Notice of Claim, and known to both parties, establishes a potential for the allegations of the Underlying Complaint to fall within the coverage of the Great Divide Insurance Policy. Defendant Great Divide's Motion for Summary Judgment is denied.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: 4/26/2021

Justice Michaela Murphy
Business and Consumer Court

10

BCDWB-CV-2020-25

DR. WILLIAM COPPOLA, INC. et al.

     *Plaintiff(s)*

*v.*

GREAT DIVIDE INSURANCE COMPANY

     *Defendant(s)*


Party Name:

*Dr. William Coppola, Inc.*
*Jeremiah Labree O.D.*

Attorney Name:

**James Poliquin, Esq.**
    Norman Hanson & Detroy,
    Two Canal Plaza
    PO Box 4600
    Portland, ME 04112-4600


*Great Divide Insurance Co.*

**James Bowie, Esq.**
    Thompson Bowie & Hatch, LLC
    PO Box 4630
    415 Congress Street 5th Floor
    Portland ME, 04112-4630